**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Slide-Lok Modular Storage Systems, Inc., an Arizona Corporation,<br><br>  Plaintiff,<br><br>vs.<br><br>Flexmar Coatings, LLC, a Pennsylvania Company,<br><br>  Defendant. | No. CV 08-0279-PHX-MHM<br><br>**ORDER** |

Currently pending before the Court is Plaintiff's Motion for a Preliminary Injunction. (Dkt.#28). On September 29, 2008, this Court held a status hearing to determine the efficacy of consolidating Plaintiff's Motion for a Preliminary Injunction with a trial on the merits, as permitted under FED.R.CIV.P. 65(a)(2). (Dkt.#36.) After reviewing the record and determining an evidentiary hearing unnecessary, the Court issues the following Order.

This case arose out of a business relationship between the Parties that began in November 2006 and lasted until December 2007, when it was terminated by Defendant Flexmar. The facts of this case are as follows. Plaintiff Slide-Lok participates in the residential garage industry by distributing various products for use by home owners, with a particular focus on cabinet manufacturing systems. Defendant Flexmar manufactures a chemical coating product that is designed to protect floor surfaces. In 2006, the Parties entered into an extended period of negotiation, which cumulated in the signing of a letter of

intent in November of that same year. (Dkt.# 28, Exhibit A.)  Although both Parties dispute the scope and terms of the agreement, there is no major dispute as to its basic parameters. Slide-Lok was to be given exclusive use and marketing rights to Flexmar's flooring system, and in return Slide-Lok agreed to actively market Flexmar's product to its wide network of distributors in the residential garage industry.  (Id. at 2.)

Sometime in 2007, their business arrangement began to disintegrate.  Flexmar alleges Slide-Lok intended to expand its marketing of Flexmar products beyond the residential garage industry into commercial, marine, architectural and other industries. (Dkt.#5, ¶ 81-82.)  After Flexmar refused to consent to such use, Slide-Lok threatened to proceed without its involvement.  (Id.)   Flexmar further claims that Slide-Lok regularly remitted payment past the 30-day deadline provided for under the November 2006 letter of intent. (Id. ¶ 91.)  In response, Flexmar claims it terminated the agreement.  (Id.)  Flexmar was thereafter stuck with unpaid invoices totaling over $110,000. (Id. ¶ 94.)

Conversely, Slide-Lok argues that by mid-2007 it became aware of Flexmar's attempts to bypass Slide-Lok and sell directly to its dealers in violation of a non-compete clause that specifically prevented Flexmar from "soliciting Slide-Lok's dealer network" for the sale or purchase of any floor coating product for either a three-year period or from one year after the parties' business relationship ended.  (Dkt.#28, p. 2-3).   Slide-Lok also contends that Flexmar and its agents induced several dealers to terminate their contracts with Slide-Lok, while Flexmar simultaneously tried to persuade various dealers to join in a class action lawsuit against Slide-Lok.  (Id. at 2.)

Slide-Lok  brought suit against Flexmar on various state claims, including breach of contract, fraudulent misrepresentation, tortious interference with business relations and breach of the implied covenant of good faith and fair dealing. (Dkt#1, Exhibit 1, p. 3-5.) Slide-Lok sought relief in the form of an injunction, a declaratory judgment and other monetary damages. (Id. at 6-8.)  Slide-Lok also asked the Court for an interpleader action. (Id. at 7.)   On February 12, 2008, Slide-Lok's Complaint was removed to federal court.

On March 4, 2008, Flexmar answered and counter-claimed for breach of contract, breach of the implied covenant of good faith and fair dealing, unfair competition under 15 U.S.C. § 1125(a), and injurious falsehood/product disparagement. (Dkt.#5, p. 12-14.) Flexmar also requested relief in the form of a declaratory judgment and monetary damages. (Id. at 15-16.)

On August 27, 2008, Slide-Lok moved this Court for a preliminary injunction. (Dkt.#28). In its Motion, Slide-Lok requested that the Court prevent Flexmar from (1) contacting or selling any present or past members of Slide-Lok's dealer network and (2) competing with Slide-Lok in the sale of polyaspartic flooring materials in the residential garage industry. (Id. at 1.) In support of its position, Slide-Lok proffered the deposition testimony of Joseph Sheehan, a former Flexmar agent, who claimed he was directed by Flexmar's management in mid-2007 to prepare to circumvent Slide-Lok and deal directly with its dealer network. (Id. at 2.) Slide-Lok also offered evidence that two of its former dealers, Sean Shiers and Mario Salwan, were improperly solicited before they left Slide-Lok. (Dkt.# 28, p. 2-3.) Slide-Lok additionally attached the affidavit of Jim Sparr, a Slide-Lok dealer in Midland, Texas, who alleged to have been contacted by Shiers and Salwan, who urged him to "terminate [his] relationship with Slide-Lok [,] buy Flexmar," and join the aforementioned class action lawsuit. (Id. at 3.)

Flexmar responded by offering the declaration of Jack Bracco, who claimed the deposition testimony of Joseph Sheehan was taken out of context. (Dkt.#31, p. 7.) Bracco alleged that once Slide-Lok decided to no longer use Sheehan as a trainer for Flexmar products, Flexmar's management told him there was a continuing obligation to stand behind Flexmar products and answer questions posed by Slide-Lok's dealers, even if Sheehan's employment had been terminated by Slide-Lok. (Id.) Flexmar also offered the declarations of Shiers and Salwan, who insisted that they had not been solicited by Flexmar while working as dealers for Slide-Lok, and that Flexmar had no involvement in their eventual departure from Slide-Lok. (Id. at 6-7.) With respect to allegations made by Jim Sparr, Flexmar contends that communications between Sparr, Shiers and Salwan show nothing

- 3 -

1  improper took place. Flexmar argues that Shiers' conversations related solely to Sparr's
2  complaints about Slide-Lok and requests that Sparr had made for additional training. (Id. at
3  7-8.) Flexmar lastly claims Salwan's e-mail correspondence with Sparr was unrelated to
4  Flexmar. (Id. at 8.)

5  **I.     Legal Standard and Analysis**

6  A preliminary injunction is an extraordinary and drastic remedy and "one that should
7  not be granted unless the movant, by a clear showing, carries the burden of persuasion."
8  Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (per curiam). A preliminary injunction
9  will not be granted absent a clear showing of likely success in the underlying claim and a
10 significant threat of irreparable injury. Warsoldier v. Woodford, 418 F.3d 989, 993-94 (9th
11 Cir. 2005); Pratt v. Rowland, 65 F.3d 802, 805 (9th Cir. 1995). Alternatively, a party may
12 show that serious questions going to the merits were raised and the balance of hardships tips
13 in his favor. Warsoldier, 418 F.3d at 994. These two alternatives are extremes of a single
14 continuum, rather than two separate tests. Nike, Inc. v. McCarthy, 379 F.3d 576, 580 (9th
15 Cir. 2004). Thus, the greater the relative hardship to the moving party, the less probability
16 of success must be shown. Id. (citing Walczack v. EPL Prolong, Inc., 198 F.3d 725, 731
17 (9th Cir. 1999)). Under either test, the movant bears the burden of persuasion, Mattel, Inc.
18 v. Greiner & Hausser GmbH, 354 F.3d 857, 869 (9th Cir. 2003), and must demonstrate a
19 significant threat of irreparable injury. AGCC v. Coalition for Economic Equity, 950 F.2d
20 1401, 1410 (9th Cir. 1991). The law and facts clearly favor the moving party. See Stanley
21 v. Univ. of S. Cal., 13 F.3d 1313, 1320 (9th Cir. 1994). But in determining whether to issue
22 a preliminary injunction, the Court is not "bound to decide doubtful and difficult questions
23 of law or disputed questions of fact." Internat'l Molders' and Allied Workers' Local Union
24 No. 164 v. Nelson, 799 F.2d 547, 551 (9th Cir. 1986).

25 Rule 65 does not require the district court hold an evidentiary hearing on a motion
26 for a preliminary injunction. Bradley v. Pittsburgh Bd. of Educ., 910 F.2d 1172, 1175 (3d
27 Cir. 1990). Instead, the decision of whether to hold a hearing is instead left at the discretion
28 of the court. 6 JAMES WM. MOOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 10.22(6)(a) (3d

ed. 1999).  In any case in which a party seeks an evidentiary hearing, the movant "must be able to persuade the court that the issue is indeed genuine and material and so a hearing would be productive--he must show in other words that he has and intends to introduce evidence that if believed will so weaken the moving party's case as to affect the judge's decision on whether to issue an injunction."  Ty, Inc. v. GMA Accessories, Inc., 132 F.3d 1167, 1171 (2d Cir. 1997).

In the instant case, Slide-Lok has failed to adequately demonstrate a significant threat of irreparable injury. While it is uncontested that Flexmar now employs former Slide-Lok dealers, nothing in the record suggests Slide-Lok has suffered an injury from this action so severe that it demands immediate relief.  Without pointing the Court towards any specific events or occurrences, Slide-Lok argues that Flexmar's use of its former dealers is causing it to lose goodwill in the business community.  However, Slide-Lok's claimed loss of goodwill is wholly speculative, and under Ninth Circuit case law,  speculative injuries are by definition not irreparable.  Goldie's Bookstore, Inc. v. Superior Court, 739 F.2d 466, 472 (9th Cir. 1984) (noting that the loss of "untold" customers and goodwill were too speculative to be considered irreparable).   The speculative nature of Slide-Lok's loss of goodwill argument  stems from the fact that it is based on nothing more than vague generalizations of harm that are otherwise unsupported by concrete "factual allegations" found in the record. Additionally, there is no indication why injuries resulting from Flexmar's employment of Slide-Lok's former dealers should in any sense be considered irreparable, when these individuals are no longer even connected  to Slide-Lok's business.  In fact, as far as Slide-Lok's former dealers are concerned, the allegations contained in the Motion for a Preliminary Injunction appear to focus more on Flexmar's supposed breach of the non-compete clause than on any allegations of wrongdoing or tortious behavior.

With respect to whether Flexmar is soliciting current Slide-Lok dealers, the Court is similarly unmoved by claims of imminent and irreparable harm.  In its briefing, Slide-Lok provided the Court with scant evidence that any person associated with Flexmar is currently attempting to appropriate its active dealers. In fact, the only evidence presented by Slide-Lok

1 on this issue is in the form of Sparr's declaration and Sheehan's deposition testimony, which
2 were attached to the instant motion. (Dkt.# 28, Exhibit B.)   First, Sparr's allegations are
3 directly contradicted by the declarations of Shiers and Salwan, who both claimed to have
4 never spoken with him about leaving Slide-Lok.   Similarly, Sheehan failed to identify a
5 single Slide-Lok dealer who has been solicited by Flexmar besides an individual named Paul
6 Currey. (See Dkt.#31, Exhibit 5.)  Slide-Lok's other allegation, namely, that Sheehan was
7 instructed by Flexmar's management to deal directly with Slide-Lok's dealers is refuted by
8 the declaration of Jack Bracco. (Dkt.#31, Exhibit 1.)  According to Bracco, while Sheehan
9 was indeed instructed to speak with Slide-Lok dealers, it was only in the context of
10 answering questions regarding technical support for Flexmar's flooring system.  (Id. ¶ 31.)
11 Sheehan's deposition testimony fails to persuade the Court that Flexmar hatched a systematic
12 plot to raid Slide-Lok's active dealer network.

13       Slide-Lok's allegation of irreparable harm is further undercut by the non-compete
14 clause itself.  On its face, that provision only appears to prohibit Flexmar from working with
15 Slide-Lok's dealer network for either a three-year period or for one-year after the Parties'
16 relationship ends.  Because the letter of intent was signed in November 2006, the three-year
17 period will be timed out by late-2009. (Dkt.#28, Exhibit A ¶ 5.)   Even if this Court were to
18 determine that the letter of intent remains in effect pending the conclusion of this lawsuit, no
19 more than a one-year contractual restriction on Flexmar's ability to work with Slide-Lok's
20 dealer network would survive beyond the suit.  If another permissible construction of the
21 non-compete clause exists, Slide-Lok has not spoken to the issue.

22       The Court further finds that the balance of hardships does not weigh strongly in favor
23 of Slide-Lok. Although Slide-Lok's general allegations are at best minimally supported by
24 admissible evidence, the remedies it seeks from the Court are extraordinarily broad.  Slide-
25 Lok has not requested that this Court merely enjoin Flexmar from attempting to induce
26 current Slide-Lok dealers to leave the network and join Flexmar—a narrowly drawn remedy
27 that perhaps would have been appropriate had it been supported by more persuasive
28 evidence.  Rather, Slide-Lok seeks to prevent Flexmar from associating with its former

- 6 -

dealers and from competing at all in the residential garage industry. The Court is unclear why such a far reaching injunction is presently needed. On the issue of whether Flexmar should be enjoined from competing against Slide-Lok, the declaration of Jack Bracco states that 80% of Flexmar's sales come from the residential garage market, and that granting Slide-Lok's request would have devastating consequences for its business. (Dkt.31, Exhibit 1 ¶ 34.) The Court is not currently prepared to take that risk based on the papers presented.

In sum, Plaintiff has not met its burden of establishing the clear need for the drastic remedy of a preliminary injunction. The evidence presented by Slide-Lok does not sufficiently demonstrate that the law and facts clearly favor the moving party. See Stanley, 13 F.3d at 1320. Likewise, consolidating a trial on the merits with an evidentiary hearing under Rule 65(a)(2) would be duplicative, amounting to an inefficient use of the Court's time and a waste of the Parties' resources. Given the nature of harm allegedly suffered by Plaintiff, the instant case should proceed through this Court's docket like any other civil dispute.

**Accordingly,**

**IT IS HEREBY ORDERED** denying Plaintiff's Motion for a Preliminary Injunction. (Dkt.#28.)

DATED this 20th day of October, 2008.

_____
Mary H. Murguia
United States District Judge